UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,  :
 :
 :
 :
 v.  :  **MEMORANDUM AND ORDER**
 :  18-CR-92 (WFK)
MOHAMMED RABAH  :
 :
 Defendant.  :
----------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 6, 2020, Mohammed Rabah ("Defendant") pled guilty to one count of bank fraud conspiracy in violation of 18 U.S.C. § 1349, to wit, a violation of 18 U.S.C. § 1344, one count of extortionate collection of credit conspiracy in violation of 18 U.S.C. § 894(a), and one count of extortionate collection of credit in violation of 18 U.S.C. § 894(a). Def.'s Agreement (the "Plea") ¶ 1, ECF No. 247.[1]  Defendant also stipulated to two additional, uncharged offenses in the Plea. *See id.* ¶ 2. The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to time served; two (2) years of probation with both the standard conditions and special condition of probation; and a $300.00 mandatory special assessment.

I. **Background**

A. **Factual Background**

1. *The Fraud Scheme*

Since at least 2012, Ppassim Elder ("Elder") recruited individuals—including young members of the Palestinian community, such as Defendant—to commit acts of bank fraud. Presentence Investigation Report (the "PSR") ¶ 15; ECF No. 596. At Elder's direction, members of the fraud scheme opened bank accounts in their own names and provided account information to Elder. *Id.* The accounts were then used for various frauds, including tricking individuals to pay for goods or services which were never provided. *Id.* Victims sent money to the accounts, which

---

[1] Citations are to the docket in *United States v. Elder, et al.*, 18-CR-92. Page pincites refer to the ECF page numbers assigned to a filing, where available, and where no ECF heading is present, to the page numbers listed in the original filing.

Elder's co-conspirators quickly withdrew in cash and sent to Elder while keeping a small percentage for themselves. *Id.*

Defendant was involved in one such fraud. In approximately December 2015, Defendant opened a Toronto-Dominion ("TD") Bank account in his name for Elder to use. *Id.* ¶ 18. A victim was subsequently "tricked into sending $31,700[.00] to [Defendant]'s account to purchase a classic car, which was never delivered." *Id.* ¶ 19.

Defendant then withdrew approximately $25,000.00 of the funds from the account but refused to give it to Elder. *Id.* "In response, Elder threatened to kill [Defendant,]" went to his home, and beat Defendant's brother in front of his two teenage nieces. *Id.* ¶¶ 19, 26. Elder continuously threatened Defendant and his family, and Defendant's family eventually paid Elder the funds. *Id.* ¶ 27.

### 2. *Extortion of Mahmoud Kasem*

Defendant was also involved in threatening and extorting a victim of Elder's scheme. *See id.* ¶ 34. Mahmoud Kasem ("Kasem"), a business owner, was unable to obtain funding to expand his business when Elder approached him and offered to invest. *Id.* ¶¶ 28–29. Elder provided checks to Kasem and requested Kasem withdraw them as cash. *Id.* ¶ 29. Some of these funds came from other bank frauds perpetrated by Elder's scheme. *See id.* ¶¶ 20–21, 30. Elder also requested Kasem issue wire transfers from the account. *Id.* ¶ 31.

In approximately March 2017, Kasem became skeptical of Elder's transactions and refused to assist, in part, because "[Kasem]'s accountant had indicated it could cause trouble with the IRS." *Id.* ¶ 32. Kasem and Elder's relationship broke down and Elder "demanded [] [Kasem] repay the amount of money left in the [account] from the deposited checks, which was approximately $40,000[.00]." *Id.* ¶ 33.

When Kasem refused due to inability to pay, Elder threatened physical violence. *Id.* ¶ 34. Pertinent here, in April 2017, Elder hired Mahdi Abdel-Rahim ("Rahim")—who in turn recruited Defendant—to throw rocks at Kasem's family home. *Id.* Elder subsequently hired co-defendants Wilber Bryant ("Bryant") and Frederick McCoy ("McCoy") to collect the money, which resulted in the killing of Kasem's father, Hani. *See* Gov't Sent'g Mem. at 2, ECF No. 624.

### 3. *Stipulated Offenses*

#### a) *Access Device Fraud*

In 2017, Defendant referred individuals to an unidentified person who used stolen credit cards to pay off parking tickets. *Id.* ¶ 39. Defendant received approximately $500.00 in proceeds from his referrals. *Id.* Defendant stipulated to this offense in his Plea. *See* Plea ¶ 2.

#### b) *Soliciting a Prostitute*

In 2019, Defendant hired a prostitute while on pre-trial release supervision for the instant case. PSR ¶ 38. Defendant stipulated to this offense in his Plea. *See* Plea ¶ 2.

### B.    Procedural History

#### 1. *The Underlying Case*

On February 21, 2018, a U.S. Grand Jury returned a then-sealed four-count indictment against Elder, Abdel-Rahim, McCoy, and Dwayne Ling ("Ling"). ECF No. 1. On November 7, 2018, a U.S. Grand Jury returned a thirteen-count superseding indictment against Defendant, Elder, Ling, McCoy, and Abdelkareem Abu Zahrieh ("Zahrieh"). ECF No. 77.

On January 3, 2019, a U.S. Grand Jury returned a then-sealed thirteen-count second superseding indictment (the "Indictment") against Defendant, Elder, Ling, Zahrieh, and Bryant. ECF No. 119. In relevant part, Count Two charged Defendant and Elder with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, to wit, a violation of 18 U.S.C. § 1344;

3

Count Six charged Defendant, Bryan, Elder, and Ling with extortionate collection of credit conspiracy with respect to two John Does, in violation of 18 U.S.C. § 894(a); and Count Seven charged Defendant, Elder, Bryant, and Ling with extortionate collection of credit with respect to the same John Does referenced in Count Six, in violation of 18 U.S.C. § 894(a).  Indictment ¶¶ 2, 6–7.  Each count against Defendant also included a criminal forfeiture allegation.  *Id.* ¶¶ 15–18.

On March 6, 2020, Defendant pled guilty to Counts Two, Six, and Seven of the Indictment.  *See* Plea ¶ 1.  Defendant also stipulated to two additional, uncharged offenses in the Plea.  *Id.* ¶ 2.

Pursuant to the Plea, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposes a term of thirty-seven months' incarceration or below.  *See id.* ¶ 3.  The Government further agreed "[n]o criminal charges will be brought against [Defendant] for his . . . participation in criminal activity involving[]" the variety of activities to which he pled guilty.  *Id.* ¶ 5(a).  Additionally, the Government agreed to "dismiss the underlying indictments with prejudice[]" as to Defendant at the time of sentencing.  *Id.*

### 2.  *Violations of Pretrial and Presentencing Release Conditions*

The U.S. Pretrial Services Agency ("Pretrial Services") notified this Court of several violations of Defendant's pre-trial and pre-sentencing release conditions.

On May 24, 2019, Pretrial Services informed the Court Defendant failed to comply with the location monitoring provision of his pre-trial release.  Pretrial Informational Mem. at 1, ECF No. 166.  On March 26, 2025, Pretrial Services submitted an additional memorandum discussing Defendant's failure to comply with the mental health evaluation ordered by this Court.  Pretrial Violation Mem. at 1, ECF No. 595.  The Court ordered no action on both violations.

On September 8, 2025, Pretrial Services informed the Court Defendant had been arrested by the New York City Police Department (the "NYPD") and charged with various state-level infractions related to possession of a forged instrument, an unlawful windshield tint, and an obstructed license plate on Defendant's vehicle.  Pretrial Violation Mem. at 1, ECF No. 608.  On February 2, 2026, the Court held a hearing to discuss the September 8th violation.  At the hearing, the Court ordered no action on the violation given the King's County District Attorney's office declined to prosecute Defendant with respect to his arrest and because Defendant had otherwise complied with his conditions of pre-trial release.  On February 4, 2026, the Government submitted a letter to the Court confirming the King's County District Attorney's Office declined to prosecute the state charges.  *See* Gov't Letter on the Disposition of Charges at 1, ECF No. 623.

### 3. *Pleas, Verdicts, and Sentencing of Co-Defendants*

On November 5, 2018, Abdel-Rahim waived indictment and pled guilty to one count of conspiracy to commit bank fraud, one count of identity theft, one count of extortionate collection of credit conspiracy, and one count of extortionate collection of credit pursuant to a superseding information.  *See* Waiver of Indictment, ECF No. 102; Min. Entry, ECF No. 103.  Abdel-Rahim is scheduled to be sentenced on June 25, 2026.

On December 18, 2018, McCoy pled guilty to one count of extortionate collection of credit conspiracy, one count of extortionate collection of credit, and one count of causing death through the use of a firearm, pursuant to the first superseding indictment.  Dec. 18, 2018 Min. Entry.  On October 11, 2023, McCoy was sentenced to 120 months' incarceration to be followed by two years of supervised release.  McCoy Sen't Mem. and Order at 1, ECF No. 540.

On August 14, 2019, Ling waived indictment and pled guilty to one count of causing death through the use of a firearm pursuant to a three-count superseding information.  Ling First Plea, ECF No. 189.  On August 2, 2023, Ling withdrew his previous guilty plea and entered a new plea to one count of extortion conspiracy and one count of committing physical violence in furtherance of extortion pursuant to a second superseding information.  *See* Ling Second Plea, ECF No. 528.  On October 1, 2024, Defendant was sentenced to 235 months' incarceration followed by three years of supervised release.  *See* Ling Sent'g Mem. and Ord. at 1, ECF No. 564.

On August 19, 2019, Zahrieh pled guilty to one count of conspiracy to commit bank fraud pursuant to the Indictment.  *See* Zahrieh Plea ¶ 1, ECF No. 192.  On August 25, 2021, Zahrieh was sentenced to ten months' incarceration to be followed by two years of supervised release, and mandatory restitution in the amount of $19,000.00.  Zahrieh Sent'g Mem. and Ord. at 1, ECF No. 321.

On March 12, 2020, a U.S. Grand Jury returned a fourteen-count third superseding indictment against Elder and Bryant.  *See* Third Superseding Indictment, ECF No. 230.  Elder and Bryant went to trial from September 20 through October 1, 2021.  Elder was found guilty of thirteen counts, while Bryant was found guilty of five counts.  *See* Jury Verdict, ECF No. 362.  On November 9, 2022, the Court vacated two of the counts as to both Elder and Bryant.  *See* Ord. at 2, ECF No. 435.  On February 8, 2023, Elder was sentenced to life incarceration with five years of supervised release.  Elder Sent'g Mem. and Ord. at 1, ECF No. 476.  The same day, Bryant was sentenced to forty years' incarceration to be followed by five years of supervised release, and mandatory forfeiture in the amount of $12,800.00.  *See* Bryant Sent'g Mem. and Ord. at 1, ECF No. 477.

6

II.    **Legal Standard**

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553.  Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines (the "Sentencing Guidelines," or "Guidelines," or "U.S.S.G.") operate as the "starting point and . . . initial benchmark" for a court evaluating a criminal sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  If and when a trial court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state—in open court—the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form."  *Id.*  The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense.  *See* 18 U.S.C. § 3553(a).  The Court now addresses each factor in turn.

III.    **Analysis**

A.    **The Nature and Circumstances of the Offense and the History and Characteristics of Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

1.    *Family and Personal Background*

Defendant was born on October 13, 1993, to the marital union of Ali Rabah and Alia Najar.  PSR ¶ 91.  He was born in Palestine and lived in the area until he immigrated to the United States in 2003.  *See id.* ¶¶ 91, 93, 95.  U.S. Immigration and Customs Enforcement records indicate Defendant is a derived United States citizen.  *Id.* ¶ 95.

Defendant was raised by his mother and older sisters in an "average-income household" before immigrating to the United States.  *Id.* ¶ 93.  Defendant's father and older brothers resided in the United States throughout Defendant's childhood to financially support Defendant's family.  *Id.*  Defendant describes difficulty reading and writing, which led to social issues and difficulty in school.  *Id.*  Defendant also describes being beaten by his father from approximately sixth through tenth grade.  *Id*.  Defendant says he did not share a strong relationship with his older siblings, as they were "old fashioned and strict."  *Id.* (internal quotations omitted).

Defendant's father, now seventy years of age, suffers from chronic health conditions stemming from several strokes he has experienced over the past ten years.  *Id.* ¶ 91.  Defendant reports his father "requires substantial assistance with daily tasks" and Defendant serves as his father's primary caregiver.  *Id.* ¶ 124.  Defendant's father remains supportive in light of the instant case.  *Id.* ¶ 91.  Defendants mother died of health complications in November 2024 at sixty-seven years of age.  *Id.*

8

Defendant has seven siblings: Ezmad, age 50; Ebraham, age 48; Khalif, age 46; Engam, age 42; Hannah, age 40; Eman, age 40; and Joma, age 25. *Id.* ¶ 92. Khalil was recently diagnosed with stage four spinal cancer, and Defendant has supported both Khalil and his children during his treatment.[2] *Id.* ¶ 92; Def.'s Sent'g Mem. at 5–7. Defendant's siblings remain supportive despite his conviction for the instant offense. PSR ¶ 92.

Defendant has never been married and has no children. *Id.* ¶ 94. Defendant has resided in Brooklyn, New York, since 2016. *Id.* ¶ 95.

### 2. *Educational and Employment History*

In 2010, Defendant completed the ninth grade at Fort Hamilton High School in Brooklyn, New York, after repeating the ninth grade three or four times. *Id.* ¶ 101. He subsequently dropped out as he felt he was "wasting time" and began working full-time. *Id.*

As for employment, Defendant was employed at a local grocery store in Brooklyn from the age of seventeen until the age of twenty-one. *Id.* ¶ 104. From the age of twenty-one until the age of twenty-four, Defendant worked as an unarmed security officer at a hookah bar in New York, New York. *Id.* He did not report his earnings from ages seventeen through twenty-one. *See id.*

In November 2016, Defendant began working as a home health aide for his father, who is in a wheelchair and suffers from several chronic health conditions. *Id.* ¶¶ 91, 103; *see supra* Part III(A)(1). Defendant reports earning approximately $1,340.00 per month. PSR ¶ 103.

The U.S. Probation Office ("Probation") indicates, "[b]ased on [Defendant's] financial profile, he appears unable to pay a fine." *Id.* ¶ 108.

---

[2] Probation indicates Defendant's brother Joma was diagnosed with spinal cancer. PSR ¶ 92. However, a letter submitted by Joma indicates it is instead Khalil who is undergoing cancer treatment. *See* Def.'s Sent'g Mem. at 5–7.

9

### 3.    *Prior Convictions*

Defendant has three adult criminal convictions prior to the instant case.  On January 23, 2014, Defendant was arrested and later convicted for aggravated unlicensed operation of a motor vehicle in the third degree.  *Id.* ¶ 82. On April 18, 2016, the New York County Criminal Court imposed a $200 fine.  *Id.*

On June 17, 2014, Defendant was again arrested and charged with aggravated unlicensed operation of a motor vehicle in the third degree.  *Id.* ¶ 83.  On June 20, 2014, Defendant was sentenced to three days of custody.  *Id.*

On June 25, 2014, Defendant was arrested and charged with aggravated unlicensed operation of a motor vehicle in the second degree.  *Id.* ¶ 84.  Defendant was sentenced to seven days of custody and a $500 fine which was paid in full.  *Id.*

### 4.    *Physical and Mental Health*

Defendant reports no current physical health concerns.  *Id.* ¶ 97.  He sustained minor injuries during a car accident in 2012 but has since recovered and does not suffer from any long-term effects.  *Id.*

However, Defendant has suffered from anxiety since 2020.  *Id.* ¶ 99.  He was previously prescribed anti-anxiety medication by his physician but no longer takes it.  *Id.*  In January 2025, Defendant informed Pretrial Services he was experiencing anxiety episodes and panic attacks, which led to emergency room visits and hospitalizations.  *Id.* ¶ 100.  On January 10, 2025, Defendant was referred for a mental health evaluation at the Counseling Services of the Eastern District of New York.  *Id.*  Defendant missed these appointments, despite being ordered to attend

10

individual mental health counseling twice a week. *Id.* At the sentencing hearing, Probation indicated Defendant had complied with his mental health obligations ordered by this Court.

>    5.    *Substance Abuse*

Defendant has no history of substance or alcohol abuse. *Id.* ¶ 98.

>    6.    *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B.    The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. Defendant was engaged not only in a scheme to defraud members of the public, motivated by greed, but he also assisted in threatening physical violence against Elder's victims. *See* PSR ¶¶ 25–26, 34. The Court's sentence will deter Defendant and others from engaging in similar conduct, justly punish Defendant for his crimes, and protect the public from Defendant's actions. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C.    The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant.  18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of bank fraud conspiracy in violation of 18 U.S.C. § 1349, to wit, a violation of 18 U.S.C. § 1344.  Plea ¶ 1 (Count Two).  Defendant faces a maximum term of thirty years' incarceration and no minimum term.  18 U.S.C. § 1344.  Defendant also faces a maximum term of five years of supervised release.  18 U.S.C. § 3583(b).  If a condition of release is violated, Defendant may be sentenced to up to three years of incarceration without credit for pre-release incarceration or time previously served on post-release supervision.  18 U.S.C. §§ 3583(e).  Defendant is ineligible for probation for Count Two. 18 U.S.C. § 3561(a)(1). Pursuant to 18 U.S.C. § 1344, Defendant also faces a maximum fine of $1,000,000.00.

Defendant also pled guilty to one count of extortionate collection of credit conspiracy in violation of 18 U.S.C. § 894(a) and one count of extortionate collection of credit in violation of 18 U.S.C. § 894(a).  Plea ¶ 1 (Counts Six and Seven).  18 U.S.C. § 894(a) carries a maximum term of twenty years' incarceration.  Defendant also faces a maximum term of three years of supervised release. 18 U.S.C. § 3583(b).  If a condition of release is violated, Defendant may be sentenced to up to two years of incarceration without credit for pre-release incarceration or time previously served on post-release supervision.  18 U.S.C. §§ 3583(e).  Defendant may also be sentenced to a term of not less than one nor more than five years of probation. 18 U.S.C. § 3561(c)(1).  He also faces a fine of $250,000.00 or twice the gross gain or gross loss.  *See* 18 U.S.C. §§ 3571(b)(2), (b)(3), (d).

Defendant also faces a mandatory special assessment of $100.00 per count of conviction. *See* 18 U.S.C. § 3013(a)(2)(A).

12

**D.      The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense**

The fourth § 3553(a) factor requires the Court to consider "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

Pursuant to Defendant's Plea, Defendant will be sentenced for Counts Two, Six, and Seven of the Indictment. *See* Plea ¶ 1. Defendant's sentence will also account for Stipulated Offense #1 (patronizing a prostitute) and Stipulated Offense #2 (access device fraud) pursuant to U.S.S.G. § 1B1.2(c). *See* Plea ¶¶ 1–2; PSR ¶¶ 40–43; U.S.S.G. § 1B1.2(c) (noting plea agreements "containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if [Defendant] had been convicted of additional count(s) charging those offense(s)").

All parties agree Defendant's Criminal History Category is I despite having three criminal convictions. PSR ¶¶ 81–86; Def.'s Sent'g Mem. at 1, ECF No. 640; Gov't Sent'g Mem. at 4. Defendant's convictions are not counted for purposes of computing criminal history because they did not result in a sentence of probation of more than one year or a term of imprisonment of at least thirty days and were unrelated to the instant offense. *See* U.S.S.G. § 4A1.2(c)(1); *see also* PSR at ¶¶ 82–84.

However, the parties disagree in their written submissions as to the Total Adjusted Offense Level in this action. The U.S. Probation Office ("Probation") and the Government assert in their written submissions Defendant's Total Adjusted Offense Level is 18.[3] *See* PSR ¶ 80; Gov't Sent'g Mem. at 4. Defendant states his Total Adjusted Offense Level is 17. Def.

---

[3] At the sentencing hearing on May 21, 2026, the parties agreed there was a clerical error in both the Government's and Probation's submissions and the proper calculation of the Total Adjusted Offense Level is 17 in the instant case.

Sent'g Mem. at 1.  Only Probation provides a step-by-step calculation of the Total Adjusted Offense Level.  *See generally* Def.'s Sent'g Mem.; Gov't Sent'g Mem.; Plea; PSR ¶¶ 40–80.

    1.  *Grouping Analysis*

U.S.S.G. §§ 3D1.1–1.5 provides rules for grouping offenses in a multiple-count case. See U.S.S.G. §§ 3D1.1–1.5.  "In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines."  U.S.S.G. Ch. 3, Introductory Commentary.

As a preliminary matter, Probation states Stipulated Offense #1 does not factor into the Guidelines calculation pursuant to U.S.S.G. § 1B1.9 because it is a Class B misdemeanor.  PSR ¶ 54.

First, Probation argues Count Two (bank fraud conspiracy) and Stipulated Offense #2 (access device fraud) should be grouped pursuant to U.S.S.G. § 3D1.2(d) because the offense level for both is "determined largely on the basis of the total amount of loss."  *Id.* ¶ 41. Second, Probation argues Count Six (extortionate collection of credit conspiracy) should be divided into two separate counts for grouping purposes because "[p]ursuant to U.S.S.G. § 1B1.2(d), when a count charges a conspiracy to commit more than one offense, it shall be treated as if the defendant was convicted on a separate count of conspiracy for each offense."  *Id.* ¶ 43. (citing U.S.S.G. § 1B1.2(d)).  Because Count 6 charged conspiracy pertaining to both John Doe #3 (Mahmoud Kasem) and John Doe #4 (Hani Kasem), Probation divides the count into "Count 6(a)" (conspiracy with respect to John Doe #3) and "Count 6(b)" (conspiracy with respect to John Doe #4).  *See id.*; Indictment ¶ 6.

Probation does not apply the same division rule to Count Seven (extortionate collection of credit) because "there is no mechanism within the guidelines [for doing so] since it is not [a]

14

conspiracy[.]" PSR ¶ 43. Probation notes "the guideline would be calculated in relation to the more serious conduct, but in this case the calculations are the same for each victim, so the calculation is done for the extortion of [John Doe #3 (Mahmoud Kasem)], and it is grouped with Count 6(a), pursuant to U.S.S.G. § 3D1.2(b)." PSR ¶ 43; *see also* U.S.S.G. § 3D1.3(a). This leaves Count 6(b) as a standalone count for grouping purposes. *See* PSR ¶¶ 45, 67–72.

2. *Count Group I – Count Two (bank fraud conspiracy); Stipulated Offense #2 (access device fraud)*

Probation notes the operative guideline for Count Group I is U.S.S.G. § 2B1.1(a)(1)[4]. *See* PSR ¶¶ 42, 55. Because Count Two has a maximum term of incarceration of twenty years or more (i.e., thirty years), a Base Offense Level of 7 applies. *Id.*; U.S.S.G. § 2B1.1(a)(1); *see also* 18 U.S.C. § 1344. Probation also notes an additional 4 levels should be added pursuant to U.S.S.G. § 2B1.1(b)(1)(C) because Defendant is accountable for an aggregate loss of $32,200.00. *See* PSR ¶¶ 18, 39, 56; *see also* U.S.S.G. § 3D1.3(b) (noting the aggregate quantity of loss for the count group applies).

In sum, Probation calculates an Adjusted Offense Level of 11 for Count Group I. *See* PSR ¶ 60

3. *Count Group II – Count 6(a) (extortionate collection of credit conspiracy – John Doe #3); Count 7 (extortionate collection of credit)*

Probation states the applicable guideline for Count Group II is U.S.S.G. § 2E2.1, which provides a Base Offense Level of 20. PSR ¶ 61. Probation applies no additional enhancements or

---

[4] The PSR indicates the operative section is U.S.S.G. § 2X1.1(a). *See* PSR ¶ 55. Pursuant to U.S.S.G. § 3D1.3(b), the Court is directed to "apply the offense guidelines that produces the highest offense level" because the offenses in Count Group I are grouped under U.S.S.G. § 3D1.2(d). *See* U.S.S.G. § 3D1.3(b). Here, Count Two corresponds to U.S.S.G. § 2X1.1, which directs the Court by cross-reference to U.S.S.G. § 2B1.1, while Stipulated Offense #2 corresponds to U.S.S.G. § 2B1.1. *See* U.S.S.G. Appendix A (Statutory Index). Therefore, the operative guideline for Count Group I would be more accurately characterized as U.S.S.G. § 2B1.1.

15

mitigating factors. *See id.* ¶¶ 61–66. In sum, Probation calculates an Adjusted Offense Level of 20 for Count Group II. *See id.* ¶ 66.

    4.   *Count 6(b) (extortionate collection of credit conspiracy – John Doe #4)*

As for Count 6(b), Probation notes the applicable guideline is U.S.S.G. § 2E2.1, which provides a Base Offense Level of 20. PSR ¶ 67. Probation applies no additional enhancements or mitigating factors. *See id.* ¶¶ 67–72.

In sum, Probation calculates an Adjusted Offense Level of 20 for Count 6(b). *See id.* ¶ 67.

    5.   *Combined Offense Level (Multiple Count Adjustment)*

Probation applies U.S.S.G. §§ 3D1.4(a)–(c) to calculate the Combined Offense Level across the count groups. *See* PSR ¶ 73. Accordingly, one unit is assigned to the group with the highest offense level and "[o]ne additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious." *Id.*; *see also* U.S.S.G. §§ 3D1.4–1.5. One-half unit is assigned to any group that is 5 to 8 levels less serious than the group with the highest offense level. PSR ¶ 73; U.S.S.G. § 3D1.5. "Any groups that are 9 or more levels less serious than the group with the highest offense level are disregarded." PSR ¶ 73; U.S.S.G. §§ 3D1.4–1.5.

Here, Probation notes 1.0 units would apply to Count Group II and Count 6(b), as both have an Adjusted Offense Level of 20 (the groups with the highest offense level). PSR ¶ 73. Because Count Group I has an Adjusted Offense Level of 11, which is 9 levels "less serious," zero additional units apply. *Id.* After the multiple count adjustment, Probation calculates a Combined Offense Level of 22. *Id.* ¶ 76.

The Court notes, however, the parties did not properly apply a three-level "dangerous weapon" enhancement to Counts Six and Seven. *See* U.S.S.G. § 2E2.1(b)(1). Pursuant to

16

U.S.S.G. § 2E2.1(b)(1)(C), a three-level enhancement applies "if a dangerous weapon (including a firearm) was brandished or possessed[]" during the commission of extortionate extension of credit. This would result in a higher Adjusted Offense Level of 23, rather than 20, and a Combined Offense Level of 25.

6. *Mitigating Factors*

Probation also applies various mitigating factors. First, Probation subtracts 3 levels for the timely acceptance of responsibility. PSR ¶¶ 77–78. Second, Probation determines Defendant meets the criteria of a Zero-Point Offender pursuant to U.S.S.G. §§ 4C1.1(a) and (b) and therefore an additional 2 levels should be subtracted. *Id.* ¶ 79.

As discussed above, Probation calculates a Total Adjusted Offense Level of 18. *Id.* ¶ 80. However, as the parties stated at the sentencing hearing, this was a clerical error and subtracting 5 levels attributable to mitigating factors from their Combined Offense Level of 22 would result in a Total Adjusted Offense Level of 17.

By the Court's calculation, subtracting the 5 levels attributable to the mitigating factors from a Combined Offense Level of 25 results in a Total Adjusted Offense Level of 20.

7. *Applying the Guidelines Sentencing Table*

Because the parties calculated different Total Adjusted Offense Levels, their Guidelines ranges vary. Probation and the Government's submissions assert a Total Adjusted Offense Level of 18 which, combined with a Criminal History Category of I, corresponds to a Guidelines range of twenty-seven (27) to thirty-three (33) months' incarceration under to the Guidelines Sentencing Table. U.S.S.G. § 5A; Gov't Sent'g Mem. at 4; PSR ¶ 110. Defendant calculated a Total Adjusted Offense Level of 17 which, combined with a Criminal History Category of I, corresponds to a Guidelines range of twenty-four (24) to thirty (30) months' incarceration.

17

U.S.S.G. § 5A; Def.'s Sent'g Mem. at 1.  This Court appreciates the sentencing arguments raised by all parties and seriously considered each in turn.

By the Court's calculation, a Total Adjusted Offense Level of 20 combined with a Criminal History Category of I corresponds to a Guidelines range of thirty-three (33) to forty-one (41) months' incarceration.  U.S.S.G. § 5A.

### E.        Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission."  18 U.S.C. § 3553(a)(5).

The parties agree a downward sentencing variance is warranted pursuant to U.S.S.G. § 5K1.1.  *See* Def.'s Sent'g Mem. at 2–3; Gov't Sent'g Mem. at 3–5.  According to the Government, Defendant's "cooperation, including his trial testimony, contributed to the successful prosecution of co-defendants [Elder and Bryant]."  Gov't Sent'g Mem. at 1.  His cooperation was "exceptionally timely," "complete[,]" "reliable[,]" and provided valuable corroboration and additional context for the existing charges, all the while putting both himself and his family at risk.  *See id.* at 5.  Defendant agrees, noting his "extensive level of cooperation" provided "critical information," and his "assistance was substantial."  Def. Sent'g Mem. at 2.

The Court has considered the parties arguments pertaining to the application of U.S.S.G. § 5K1.1.  Otherwise, the parties have not drawn the Court's attention to any applicable policy statements.  Finding no others on its own, the Court proceeds to the next § 3553(a) factor.

### F.        The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  The parties do not raise any arguments related to

18

unwarranted sentencing disparities. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.    The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Probation indicated the amount of restitution cannot be determined at this time because at least one victim has indicated they do not intend to seek restitution and no other responses have been received as of the filing of the PSR. PSR ¶ 48. The Court reserves its right, pursuant to 18 U.S.C. § 3664(d)(5), to hold an evidentiary hearing within ninety (90) days after this sentencing to determine the specific amounts owed to Defendant's victims. The Court will issue a Final Order of Restitution accordingly.

## IV.    Conclusion

For the reasons set forth above, the Court sentences Defendant to time served; two (2) years of probation with both the standard conditions and special condition of probation; restitution as set forth in a forthcoming Order of Restitution; and a $300.00 mandatory special assessment. This sentence is sufficient, but not greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's present financial circumstances.

The Court expressly adopts the factual findings of the PSR, as corrected herein, to the extent those findings are not inconsistent with this opinion. The Court advises Defendant he has fourteen (14) days to appeal the order and judgment of this court from the date the order and judgment are entered.

19

**SO ORDERED.**

**s/WFK**
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated:  May 22, 2026
      Brooklyn, New York